UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.09-60157-CIV-UNGARO

DA AIR TAXI LLC,

    Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES INC.,

    Defendant.
                                /

## ORDER ON MOTION TO DISMISS

      THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Amended Class Action Complaint, filed on April 13, 2009. (D.E. 11.) Plaintiff filed its Response in opposition on April 30, 2009. (D.E. 13.) Defendant filed its Reply in further support of its Motion on May 11, 2009. (D.E. 14.) Accordingly, the Motion is now ripe for adjudication.

      THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this action arises out of Plaintiff's purchase of a personal-use twin engine aircraft manufactured by Defendant–a Diamond DA 42 Twin Star ("DA 42"). (Am. Compl. ¶ 10.) Plaintiff purchased the aircraft in question on May 14, 2007, from Premier Aircraft Sales, Inc. ("Premier"), an authorized distributor of the DA 42 located in Fort Lauderdale, Florida. (Am. Compl. ¶ 10.) The DA 42 is powered by twin Thielert 1.7 liter turbo diesel engines (the "Thielert engines"). (Am. Compl. ¶ 11.)

      According to Plaintiff, during the negotiations for its purchase of the DA 42, it was supplied with the "Diamond D42-tdi Operating Cost and Break-even Analysis" (the Breakeven Analysis"), which was dated April 27, 2007. (Am. Compl. ¶ 13.) Plaintiff alleges that the Breakeven Analysis was a basis of the bargain between the parties and was a warranty by Defendant to Plaintiff that, *inter alia*, the Thielert engines on the DA 42 would not require an overhaul until they reached at least 2,400 operating hours. (Am. Compl. ¶ 13.) Plaintiff also alleges that at the time that it purchased the aircraft, Defendant was fully aware that the Thielert

engines were actually unreliable and could not be expected to operate for 2,400 hours without the necessity of replacement.  (Am. Compl. ¶ 13.)  Plaintiff states that after only approximately 500 hours of engine operation, one of the Thielert engines on the DA 42 that it purchased was discovered to have a broken piston cooling nozzle and needed replacement.  (Am. Compl. ¶ 21.)

As a result of this engine trouble, Plaintiff filed suit against Defendant, alleging breach of warranty (Counts I-IV), fraud/deceptive conduct (Counts V-VII & X), and negligence/strict liability (Counts VIII & IX).  (*See generally* Am. Compl.)  Defendant has now moved to dismiss the Amended Complaint.  In its Motion, Defendant argues that the Court should dismiss Plaintiff's Amended Complaint pursuant to Rules 9(b) and 12(b)(6) because it fails to plead fraud with the requisite particularity and because it fails to state a claim upon which relief may be granted.  (Def.'s Mot. 1.)

In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  When considering a motion to dismiss, the Court must liberally construe the complaint in the plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  At this stage of the litigation, the Court must consider the allegations contained in the plaintiff's complaint as true, and accept all reasonable inferences therefrom.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  While a complaint does not need to set forth detailed factual allegations to survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  In practice, to adequately state a claim, "plaintiffs must do more than state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms.*, 372 F. 3d 1250, 1263 (11th Cir. 2004).  Moreover, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Id*. at 1262-63 (citation and

quotation marks omitted).

In Counts I and III, Plaintiff alleges claims under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq*., and Florida law, respectively, for breach of express warranty based on the Breakeven Analysis that Plaintiff claims it was provided in connection with its purchase of the DA 42.  Defendant first argues that Counts I and III fail as a matter of law because the Breakeven Analysis–the purported express warranty (*see* Am. Compl. ¶¶ 37-38, 61-62)–does not constitute a warranty.  (Def.'s Mot. 7.)

The MMWA defines a written warranty, in pertinent part, as "any written affirmation of fact or written promise made in connection with the sale of a consumer product . . . which relates to . . . workmanship and affirms or promises that such . . . workmanship . . . will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A).  Under Florida law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313(1)(a).  In addition, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the description." Fla. Stat. § 672.313(1)(b).

Whether a statement gives rise to an express warranty is a question of fact for the fact-finder. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 279 (4th Cir. 2007) (citing 18 Samuel Williston and Richard A. Lord, *A Treatise on the Law of Contracts* § 52:45 (4th ed. 2007 (citations omitted)).  In its Amended Complaint, Plaintiff has pleaded that Defendant provided it with the Breakeven Analysis, including its statement regarding the length of time before engine overhaul would be needed, during the negotiations for the purchase of the DA 42 in question.  Because no discovery has yet taken place, the exact circumstances regarding how and when the Breakeven Analysis was provided are unclear.  Additionally, no evidence has been presented related to any conversations by the parties about the Breakeven Analysis and the statements

3

contained therein.  Thus, given the procedural posture of this case, the Court finds that any determination about whether the Breakeven Analysis gave rise to an express warranty is premature.

In so finding, the Court believes *Royal Typewriter Co., a Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir. 1983), to be instructive.  In *Royal Typewriter*, the manufacturer made oral statements to the purchaser that the photocopier had a useful life of ten years calculated at the rate of 8,000 copies per month and that the maintenance factor for such photocopier would be ½ cent per copy.  *Id*. at 1097, 1101.  The Eleventh Circuit held that such statements constituted "the type[s] of affirmations which give rise to express warranties."  *Id*. at 1100-01.  The statement in question in the Breakeven Analysis is sufficiently similar to the statements in *Royal* that the Court is confident that a question of fact exists as to whether an express warranty arose from such statement.[1]

Defendant also contends that Plaintiff's express warranty claims fail because Defendant's limited warranty excludes the aircraft's engines.  (Def.'s Mot. 7-8.)  Having reviewed the Amended Complaint, the Court can find no mention of Defendant's limited warranty or whether it was ever provided to Plaintiff.  As such, the Court cannot consider such document at the motion to dismiss stage.  *See Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

Defendant next argues that Plaintiff's implied warranty claims (Counts II and IV) fail as a matter of law because no privity of contract exists between the parties.  (Def.'s Mot. 8-9.)  The Court agrees.  As the Eleventh Circuit has stated, "[u]nder Florida law, privity of contract is an

---

[1]  The Court notes Defendant's arguments that the engine overhaul statement is merely an assumption that does not constitute a warranty and that Plaintiff has mischaracterized the Breakeven Analysis, given that it is marked "confidential" and "internal use only." (*See* Def.'s Mot. 6-7.)  While the Court may find them persuasive, it cannot find them dispositive at this stage of the case, given that no discovery has yet taken place as to the Breakeven Analysis's role in the bargaining for the purchase of the DA 42.  The Court also reminds Defendant that its intent intentions in producing the Breakeven Analysis are irrelevant for purposes of whether an express warranty was created.  *See Miles v. Kavanaugh*, 350 So. 2d 1090, 1093 (Fla. 3d DCA 1977).

essential element of a claim for breach of implied warranty." *Bailey v. Monaco Coach Corp.*, 168 Fed. Appx. 893, 894 n.1 (11th Cir. 2006) (citing *Mesa v. BMW of North America, LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) (other citations omitted). In the absence of direct privity of contract,[2] a court may find that privity exists between a manufacturer and a purchaser if the purchaser purchased the product from the manufacturer's agent. *See, e.g., Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325-36 (Fla. 3d DCA 2008). In its Amended Complaint, though, Plaintiff has failed to allege any facts that, if true, would establish the necessary elements of an agency relationship[3] between Defendant and Premier. Plaintiff alleges only that it purchased the aircraft "through" Premier and that Premier "is an authorized Diamond distributor and specialist" and "is the primary distribution channel for [Defendant] in the United States;" it does not even claim that Premier is Defendant's agent or that it believed during at one time that Premier was Defendant's agent. As such, the Court finds that Counts II[4] and IV must be dismissed because they fail as a matter of law.[5] Plaintiff may, however, replead its implied warranty claims so as to allege facts

---

[2]    Plaintiff does not allege that it purchased the aircraft from Defendant so as to create direct privity of contract between the parties. In addition, the purchase contract does not mention Defendant and establishes that Premier sold the aircraft to Plaintiff. (See Def.'s Mot., Ex. A.) The Court may properly consider the purchase contract because it is central to Plaintiff's claim and undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citation omitted).

[3]    The essential elements of an actual agency relationship are: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Ilgen v. Henderson Properties, Inc.*, 683 So. 2d 513, 515 (Fla. 2d DCA 1996) (citation omitted).

[4]    The same analysis applies to both Counts II and IV because implied warranty claims under the MMWA arise out of and are defined by state law. *Bailey*, 168 Fed. Appx. at 894 n.1 (citing 15 U.S.C. § 2301(7)).

[5]    Both *Lady Di Fishing Team, LLC v. Brunswick Corp.*, 2007 WL 3202715 (M.D. Fla. 2007), and *Bland v. Freightliner LLC*, 206 F.Supp. 2d 1202 (M.D. Fla. 2002), are distinguishable. In *Lady Di*, the facts alleged by the plaintiff purchaser indicated that although the plaintiff purchased the yacht from a third party dealer, this third party dealer was the defendant manufacturer's agent and the plaintiff "negotiated the manufacture, purchase and sale agreement, delivery, and subsequent repairs of the yacht with [the defendant]." 2007 WL 3202715 at *5. In *Bland*, the facts alleged by the plaintiff purchaser indicated that although the plaintiff purchased the motor home from a third party dealer, this third party dealer was the manufacturer's agent, the sales contract mentioned the manufacturer when waiving liability, the

sufficient to establish an agency relationship between Defendant and Premier.[6]

With respect to Plaintiff's tort claims (Counts V, VI, VIII, and IX), Defendant contends that such claims are barred by the economic loss rule. (Def.'s Mot. 10-11.) In Florida, courts apply the economic loss rule in two circumstances: (1) when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract; and (2) when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property. *Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). Thus, Plaintiff's products liability claim (Count IX), which alleges damage to the aircraft itself based upon a defect in the Thielert engines, must be dismissed, as it is barred by the economic loss doctrine. *See Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So. 2d 899, 901 (Fla. 1987) (quoting *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986)). However, certain claims involving torts committed independently of the contract breach, such as fraud in the inducement (Count V), fraudulent concealment (Count VI), and negligent misrepresentation (Count VIII), are outside the scope of the economic loss doctrine. *See Indemnity Ins.*, 891 So. 2d at 537; *see also Allen v. Stephan Co.*, 784 So. 2d 456, 458 (Fla. 4th DCA 2000) (explaining that when a misrepresentation is simply made and relied upon in inducing the completion of a transaction, an

---

manufacturer's name was used almost interchangeably with the dealer's in the warranty, and the warranty required the plaintiff to return the vehicle to one of the manufacturer's authorized dealers for repairs. 206 F. Supp. 2d at 1207. Here, on the other hand, Plaintiff has only alleged that Defendant supplied it with the Breakeven Analysis and several sales brochures, which allegations are insufficient to create privity between the parties. Plaintiff's argument regarding the number of Defendant's aircrafts sold in the United States is irrelevant.

[6] The Court declines to consider Defendant's remaining arguments related to the implied warranty claims because they are premature at this juncture of the proceedings, considering that no discovery has taken place regarding the limited warranty and the parties' understandings of the disclaimers and the term "as is." *See, e.g., Knipp v. Weinbaum*, 351 So. 2d 1081, 1084-85 (Fla. 3d DCA 1977).

action upon it is not barred by the economic loss rule).  Thus, Counts V, VI, and VIII[7] are not subject to dismissal pursuant to the economic loss rule at this time.

Defendant next argues that Plaintiff's fraud-related claims (Counts V, VI, and VIII) fail as a matter of law.  The Court will address each of these Defendant's arguments in turn.  In order to state a claim for relief for fraudulent inducement (Count V), a plaintiff must allege that (1) the representor made a misrepresentation of a material fact, (2) the representor knew or should have known of the falsity of the statement, (3) the representor intended that the representation would induce another to rely and act on it, and (4) the plaintiff suffered injury in justifiable reliance on the representation.  *Samuels v. King Motor Co. of Ft. Lauderdale*, 782 So. 2d 489, 497 (Fla. 4th DCA 2001) (citation omitted).  In Count V, Plaintiff has alleged that Defendant, well aware of the defects in the Thielert engines, misrepresented how long the engines would last before needing an overhaul[8] in order to induce Plaintiff to buy the DA 42 and that Plaintiff was injured because the engine failed after only 500 hours and needed to be repaired.  Thus, the Court finds, subject to its analysis regarding the pleading requirements of Rule 9(b) *infra*, that Plaintiff has adequately stated a claim for fraudulent inducement.

Defendant's argument that Plaintiff had no right to rely on the representations in the Breakeven Analysis fails.  At this stage, no evidence has been presented to the Court regarding (1) the circumstances surrounding the disclosure of Breakeven Analysis, (2) any conversations by the parties about the Breakeven Analysis and the statements contained therein, and/or (3) the parties' understanding of the terms of the contract, including "as is."  Thus, given the procedural posture of this case, the Court finds that any determination about whether Plaintiff's reliance

---

[7] Count VIII's allegations that relate to purported negligent misrepresentation fall outside the scope of the economic loss rule. (*See* Am. Compl. ¶ 113.)  However, Count VIII's allegations that relate to purported simple negligence (*see* Am. Compl. ¶¶ 111, 112) are barred by the economic loss rule.  *See Indemnity Ins. Co.*, 891 So. 2d at 536.

[8] The Court notes and disregards Defendant's contention that the Breakeven Analysis cannot constitute a misrepresentation (Def.'s Mot. 12), as it would be improper for the Court to make such a conclusion at the motion to dismiss stage.

upon the alleged misrepresentation at issue would be premature.

Additionally, the Court sees no merit in Defendant's argument that Count V fails because Plaintiff has ratified the contract and waived its right to rescind. (Def.'s Mot. 14.) The cases that Defendant cites in support do not state that a party who has accepted the benefits of a contract may not sue for fraudulent inducement. *See, e.g. Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 313 (Fla. 2000) (holding that a plaintiff which proceeds on a fraudulent inducement claim for damages remains subject to the burdens that the contract places upon him, including the choice-of-law provision). In fact, Florida law is clear that a plaintiff may elect to sue for damages occasioned by fraudulent inducement. *See, e.g., HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) (citations omitted).

As for Plaintiff's fraudulent concealment claim (Count VI), Defendant contends that Plaintiff has failed to plead any relationship that would give rise to a duty owed by it to Plaintiff. (Def.'s Mot. 16-17.) Defendant is correct that an action based on concealment of a material fact requires the existence of a duty to disclose on the part of the alleged concealer. *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. 4th DCA 2000) (citation omitted). Such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them. *Id*. at 880 (internal quotations and citations omitted). Here, Plaintiff has not sufficiently alleged the existence of such a relationship between the parties in the Amended Complaint.[9] (*See generally* Am. Compl.) Additionally, as the Court found *supra*, Plaintiff has failed to sufficiently allege the existence of an agency relationship between Premier and Defendant such as would create a contractual relationship between the parties. As such, the Court finds that Count VI fails to state a claim upon which relief may be

---

[9] While Plaintiff's argument that the fact that Defendant disclosed material information about the DA 42 in the form of the Breakeven Analysis gave rise to a duty to disclose all known information about the DA 42 has merit in light of *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003), the Amended Complaint still does not sufficiently allege when the Breakeven Analysis was provided or by whom. *See infra* p. 9.

granted and must be dismissed. However, the Court will provide leave to further amend the Amended Complaint in order to attempt to address these deficiencies.

Moreover, having reviewed the Amended Complaint in its entirety, the Court is not satisfied that Plaintiff has pleaded these fraud-related counts (Counts V, VI, and VIII) with sufficient particularity to satisfy Fed. R. Civ. P. 9(b). Rule 9(b) requires Plaintiff to set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp. 2d 1283, 1294 (S.D. Fla. 2007) (citations omitted). As Plaintiff states in its Response, it has identified (1) the misrepresentation (the Breakeven Analysis's statement that the engines would last 2,400 hours before requiring an overhaul) or omission (that Defendant concealed known defects in the DA 42 from Plaintiff) made; (2) the content of such statements (the engine's lifespan before overhaul) and the manner in which they misled Plaintiff (it caused Plaintiff to believe that the engines would last for 2,400 hours without needing an overhaul); and (3) what Defendant obtained as a consequence of the fraud (the sale of the aircraft). (*See generally* Am. Compl.) However, Plaintiff has not provided sufficient detail as to the time and place of the statement (or omission) and the person responsible for making the statement (or omission), as the Complaint states only that Defendant supplied Plaintiff with the Breakeven Analysis during the negotiations for the purchase of the aircraft. (*See* Am. Compl. ¶ 13.) Because there is no mention of which person(s) supplied the Breakeven Analysis to Plaintiff and the specific time and place such Breakeven Analysis was supplied to Plaintiff, the Court finds that Count V must be dismissed without prejudice. In addition, the Court finds that Counts VI and VIII must be dismissed without prejudice because Plaintiff has failed to specify the person(s) responsible for the omission regarding the defects in the DA 42 and its engines and when such omissions occurred.

Defendant also contends that Plaintiff's misleading advertising claim (Count VII) fails as

a matter of law.  The Court agrees.  The relevant misleading advertising statutes do not encompass representations made by a sales agent or seller directly to the purchaser; instead, the allegedly false or misleading representations must be "disseminated before the general public of the state, or any portion thereof."  *See* Fla. Stat. § 817.41(1); *see also S.H. and Development Corp. v. Kincaid*, 495 So. 2d 768, 770 (Fla. 5th DCA 1986) ("Although the representations made by the sales agent directly to the [plaintiffs] may have been fraudulent, that fraud is not encompassed by the provisions of section 817.40 or 817.41, which related to misleading advertising "disseminated before the general public of the state, or any portion thereof.") Because Plaintiff has failed to allege that Defendant's purported misrepresentations were made before the general public of Florida, the Court finds that Count VII fails as a matter of law and must be dismissed.

      Finally, Defendant argues that Count X fails to state a claim under which relief may be granted.  Count X alleges a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 *et seq*.  Courts have held that a plaintiff alleging a violation of FDUTPA must show that the complained-of practice "was likely to deceive a consumer acting reasonably in the same circumstances."  *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000).  Defendant essentially reiterates its argument that the "assumptions" in the Breakeven Analysis, by their very nature, could not deceive a consumer acting reasonably.  However, as the Court has stated, *supra*, in the absence of any discovery, it would be premature to conclude anything about the true nature of the Breakeven Analysis.  Thus, the Court finds that Defendant's arguments regarding Count X fail.  Accordingly, it is hereby

      ORDERED AND ADJUDGED that the Motion (D.E. 11) is GRANTED IN PART.  Counts II, IV, V, VI, VII, and VIII are DISMISSED WITHOUT PREJUDICE.  Count IX is DISMISSED WITH PREJUDICE.  It is further

      ORDERED AND ADJUDGED that Plaintiff MAY file a second amended complaint that corrects the deficiencies pointed out herein on or before May 22, 2009.  Should Plaintiff decline

to file a second amended complaint, Defendant SHALL file its Answer to Plaintiff's Amended Complaint on or before June 1, 2009.

DONE AND ORDERED in Chambers, Miami, Florida, this 14TH day of May, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record