UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60157-CIV-UNGARO/SIMONTON

DA AIR TAXI, LLC.,

    Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES,

    Defendant.
    _____/

## ORDER GRANTING, IN PART, PLAINTIFF'S MOTION TO COMPEL

Presently pending before the Court is Plaintiff's Motion to Compel Discovery (DE # 41). The Defendant has filed an Opposition to the Motion (DE # 47). The Motion has been referred to the undersigned Magistrate Judge (DE # 44). A hearing was held on the Motion on December 14, 2009 and at the conclusion of the hearing, the Motion was GRANTED, in part, as set forth in this Order.

### I. BACKGROUND

This matter involves breach of warranty and fraud claims related to the sale of a Diamond DA 42 Twin Star, a small private airplane, to the Plaintiff which was designed and manufactured by the Defendant, Diamond Aircraft Industries ("Diamond"). According to the Third Amended Class Action Complaint, after 483 hours of operation, one of the engines in the aircraft, a Thielert 1.7, suffered a broken piston cooling nozzle requiring the replacement of both of the Thielert 1.7 engines (DE # 29). Plaintiff alleges that prior to the sale of the aircraft, the Defendant, through its distributor Premier Aircraft Sales, Inc., ("Premier") disseminated a "Break-even Analysis" to the Plaintiff which represented that the standard time before overhaul (TBO) of the engine was 2400 hours. Plaintiff further alleges that a number of DA 42 planes with Thielert 1.7 engines

manufactured by the Defendant have suffered similar premature breakages and that the Defendant knew of this defect prior to selling the aircraft to the Plaintiff. The manufacturer of the engine is now bankrupt and Diamond no longer sells the aircraft at issue. The operative Complaint alleges six causes of action: Failure to Repair under Express Warranty pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (Count I); Breach of Express Warranty (Count II); Fraudulent Inducement and Concealment (Counts III and IV); Negligent Misrepresentation (Count V); and, violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count VI) (DE # 29)

In its Answer, Defendant asserts that the Limited Warranty issued for the aircraft bars Plaintiff's claims and also asserts that the Breakdown Analysis was not a warranty nor a representation made by Diamond (DE # 31). Defendant also contends that it was not in privity of contract with the Plaintiff.[1]

II. **MOTION TO COMPEL**

Plaintiff filed the instant Motion to Compel Discovery (DE #41) seeking to compel production of documents responsive to certain of Plaintiff's Second Request for Production of Documents and better responses to two Interrogatories contained in Plaintiff's First Set of Interrogatories. Defendant filed an Opposition to the Motion

---

[1] Plaintiff sought class certification in this matter which was denied by the Court based upon: 1) Plaintiff's failure to meet the heightened class action requirements of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (Count 1) because there are fewer than 100 named Plaintiffs in the case as required by that Act; 2) Plaintiff's failure to meet the numerosity requirement of Fed.R.Civ.P. 23 (a) because Plaintiff only made a showing of 16 putative class members; 3) Plaintiff's failure to show that common questions of law and fact predominate the state law claims (Counts II through VI) because the putative plaintiffs are located throughout the United States and Defendant is not a Florida corporation, and, 4) Plaintiff's failure to demonstrate the superiority of class certification (DE # 45).

wherein it asserted that the documents requested by the Plaintiff were not relevant to the instant action and contending that it had provided full and complete responses to Plaintiff's Interrogatories.

The undersigned held a hearing on the Motion and at the outset of that hearing, the Parties indicated that they had resolved a number of the issues raised in Plaintiff's Motion but still disagreed about: 1) whether the scope of discovery should be limited to information related to the specific model of plane purchased by the Plaintiff or extend to other models of aircraft that also used the allegedly defective engine; and 2) whether the Defendant should have to provide better responses to Plaintiff's discovery requests related to the Break-even Analysis attached to Plaintiff's Second Amended Complaint. After hearing argument from both Parties, the undersigned made the following rulings from the bench and granted the Plaintiff's Motion, in part.

### III.  RULINGS MADE AT HEARING ON MOTION TO COMPEL

#### A. Scope of Discovery

In several of its discovery requests, Plaintiff sought to have Defendant produce all documents which related to the performance of the Thielert 1.7 engine, including documents referencing the TBO (time before overhaul) and TBR (time before replacement) for the engine.  Those requests were not limited to information about the DA 42 model aircraft purchased by the Plaintiff.

Defendant objected to the Plaintiff's Requests as overly broad in light of the claims in Plaintiff's Third Amended Complaint.  Defendant asserted that because the only aircraft at issue was DA 42, the aircraft purchased by the Plaintiff, that discovery on other aircraft sold by the Defendant was irrelevant.

At the hearing, the Parties restated their respective positions and specifically

**Defendant reasserted its argument that information related to the performance of the engine in the DA 40 aircraft was not relevant to the claims raised by Plaintiff in its Third Amended Complaint.**

**The undersigned concluded, as stated at the hearing, that although the Plaintiff's claims arose from the alleged defective performance of the Thielert 1.7 engine in the DA 42 purchased by the Plaintiff, the Complaint also alleges that the Defendant had notice of the defect in that engine before selling the aircraft to the Plaintiff. Further, by all accounts, the Thielert 1.7 engine at issue was also installed in the DA 40 model aircraft and thus defects occurring in that engine while installed in the DA 40 aircraft might have placed the Defendant on notice of the defective nature of the engine, generally. Moreover, the Defendant did not argue that the performance of the Thielert 1.7 engine would vary based upon the model of aircraft that the engine was installed in, and therefore, information on whether the Defendant had notice of an alleged defect in that engine should not be limited to the aircraft purchased by the Plaintiff.**

**Accordingly, at the hearing, the Defendant's objections on this ground were overruled and the Defendant was ordered to produce documents responsive to Plaintiff's Second Request for Production related to the DA 40 aircraft by the close of business on January 8, 2010.**

### B. Break-even Analysis-Plaintiff's Interrogatories ##s 2 & 3

**In the Motion to Compel Plaintiff also sought to compel information about witnesses who were involved in the preparation and dissemination of the Break-even Analysis. The definition of the Break-even Analysis contained in Plaintiff's Interrogatories was as follows: "The Breakeven Analysis shall mean the document attached as Exhibit E to the Second Amended Class Action Complaint." (DE # 41-3 at 8).**

**The document attached to the Plaintiff's Second Amended Complaint has a "date prepared" date of April 27, 2007, is captioned "Diamond DA42-tdi Operating Cost and Break-even Analysis", has the words "Diamond Aircraft Industries Inc. CONFIDENTIAL" and "Internal Use Only" on the bottom of the page, and provides, among other things, the assumption that the "Engine TBO" is "2,400" (DE #41-3 at 13).  The Defendant responded to Plaintiff's discovery requests by stating, *inter alia*, that it had no knowledge of who created the Break-even Analysis or otherwise participated in the dissemination or transmission of that document (DE # 41-4 at 7-8).  In its Motion, Plaintiff asserted that the Defendant's response that it had no knowledge of this document was insufficient.**

**In support of its argument, Plaintiff provided copies of documents which included other Break-even Analyses (Bates Nos. PAS 0007-PAS 0012) which, according to Plaintiff, were e-mailed directly from one of the Defendant's directors, Chuck Glass, to an employee of Premier, the aircraft distributor who sold the aircraft at issue (DE # 41-5). Plaintiff asserted that it had obtained those documents from Premier pursuant to a subpoena issued by the Plaintiff.  In addition, Plaintiff contended that Susan McKenzie, the records custodian of Premier, testified at her deposition that the Break-even Analysis received by the Plaintiff was a document that she had seen before that had been sent to Premier as part of routine e-mails from Diamond (DE ##s 41 at 10-11, 43-1 at 24-5).**

**In response to the Plaintiff's Motion to Compel, Defendant asserted that it had already properly responded to the Interrogatories because the requests referred only to the Break-even Analysis document attached to the Plaintiff's Complaint as defined by Plaintiff, and that Defendant had no knowledge of the origin, preparation or dissemination of that document.**

5

**At the hearing, the Defendant stated that the Break-even Analysis dated April 27, 2007, attached to the Plaintiff's Second Amended Complaint (DE # 29-5) which is the same document appended to the deposition transcript of Susan McKenzie and Bates numbered PAS 0001 (DE # 43-2), is distinct from those documents obtained from Premier which are Bates Numbered PAS 0007-0012, which also contain Break-even analyses. Defendant's counsel represented that Diamond's previous response that it had no knowledge of the Break-even Analysis Bates numbered PAS-0001 and attached to Plaintiff's Second Amended Complaint remained the same; Defendant Diamond did not participate in the preparation or dissemination of that document and was not aware of how Premier came into possession of that document. Also, counsel for Diamond hypothesized that Ms. McKenzie was likely speaking broadly in her deposition about receiving Break-even analyses through emails and not speaking specifically about the Break-even Analysis dated April 27, 2007. Finally, counsel for Defendant noted that the date on the April 27, 2007 Break-even Analysis was an embedded date and thus did not necessarily reflect the date that the document was actually created, but reflected the date that the document was printed, and that the Defendant did not have a document that contained that same date in its files.**

**Based upon the Parties' arguments, and after reviewing the documents at issue, including Plaintiff's discovery requests, at the hearing, the undersigned opined that because the Break-even Analysis definition contained in Plaintiff's Interrogatories specifically identified only the April 27, 2007 Break-even analysis appended to Plaintiff's Second Amended Complaint, and given that the Defendant maintained that it had no knowledge of the creation or dissemination of that specific document, that Defendant's responses to the Plaintiff's requests related to the document were sufficient.**

**Accordingly, the undersigned denied the Plaintiff's request to compel better answers to the discovery requests seeking information on the Break-even analysis attached to the Plaintiff's Complaint.**

**However, the undersigned held that the Plaintiff would be allowed to serve Supplementary Interrogatories via email with a revised definition of the Break-even analysis at issue, if Plaintiff so desired. The undersigned additionally ordered that the time for the Defendant to respond to any such requests would be shortened to 10 business days from the supplemental date the requests were served on the Defendant.**

### C. *Ore Tenus Objection*

**For the first time at the hearing, the Defendant raised an objection to the scope of the Plaintiff's discovery requests to the extent that those requests sought information for aircraft problems other than a broken cooling nozzle; the only breakage Plaintiff alleged occurred in the DA 42 aircraft due to the defective engine.**

**Plaintiff countered that the broken cooling nozzle was only one possible manifestation of a defective engine, and that other breakages, such as a cracked cylinder, were also the result of the faulty engine that ran too hot. Defendant responded that the Plaintiff's assessment on breakages relating to a too hot engine was incorrect. Neither Party, however, presented an expert opinion on the matter.**

**The undersigned concluded that although Plaintiff's assertion might ultimately be proven incorrect, at this point, Plaintiff's position that both a broken cooling nozzle and a cracked cylinder could be caused by the Thielert engine running too hot was plausible and, if correct, would be relevant to this action and thus discoverable. Therefore, Defendant's Ore Tenus Objection was overruled and Defendant was ordered to provide responsive answers and documents to Plaintiff related to both a broken cooling nozzle**

and a cracked cylinder by January 8, 2009.

### D.  *Responses to Plaintiff's Other Discovery Requests*

At the hearing, the Parties indicated that although the Defendant had provided the Plaintiff with informal draft responses to Plaintiff's Request for Production of Documents that formal responses had not been provided and responsive documents had not yet been produced.  The Parties agreed that the draft responses that were forwarded by the Defendants to the Plaintiff on October 15, 2009 would be finalized and furnished to the Plaintiff on or before December 30, 2009.  Therefore, consistent with the Parties' agreement, the undersigned directed the Defendant to provide formalized answers and the relevant documents by that date.

### III.  CONCLUSION

Therefore, based upon a review of the record as a whole and as ruled from the bench at the hearing on the Motion to Compel, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Discovery (DE # 41) is **GRANTED, in part,** consistent with the rulings made at the hearing on this matter and as memorialized in this Order as follows:

1. Defendant shall produce any additional documents responsive to Plaintiff's Second Request for Production of Documents related to the DA 42 aircraft on or before the close of business on or before January 8, 2010;

2.  Defendant shall produce any additional discovery responsive to Plaintiff's discovery requests related to a cracked cylinder on the DA 40 or DA 42 aircraft on or before the close of business January 8, 2010;

3.  Defendant shall provide finalized responses and produce the relevant

documents responsive to Plaintiff's Second Request for Production as agreed to by the Parties on or before the close of business on December 30, 2009;

    4.  Plaintiff may serve the Defendant via email with Supplemental Interrogatories which contain a revised definition of the Break-even analysis.  The Defendant shall respond to any such requests within 10 business days from the date of service.

**DONE AND ORDERED** in chambers in Miami, Florida on January 26, 2010.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
**The Honorable Ursula Ungaro**
    **United States District Judge**
**All counsel of record**